[Civ. No. 13345. Third Dist. June 20, 1973.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Plaintiff and Appellant, v.
CIVIL SERVICE EMPLOYEES INSURANCE COMPANY,
Defendant and Respondent.

**28**

---

**COUNSEL**

Clyde Small for Plaintiff and Appellant.

Coshow, Barr & Tocher, William W. Coshow and John D. Barr for Defendant and Respondent.

---

**OPINION**

**JANES, J.**—This appeal involves a coverage dispute between a home-owner's insurance carrier (plaintiff; hereinafter, "Hartford") and an automobile insurance carrier (defendant; "Civil Service").

The matter came before us upon a somewhat inconclusive record.. At the heart of the dispute is a claim made by Mrs. Elizabeth Ehrenburg that she suffered personal injury on October 24, 1966. As we hereafter show, her claim was settled by Hartford prior to trial, hence there has been no finding as to the facts underlying her claim. The coverage dispute was submitted to the trial court upon an agreed statement which recited inter alia that Mrs. Ehrenburg *alleged* to have been injured in the manner here-inafter described. The judgment from which plaintiff appeals was entered on findings which did not determine how (or whether) Mrs. Ehrenburg was injured; in this respect, the findings merely reiterated her allegations of the fact and manner of her injury. At oral argument in this court, how-ever, counsel stipulated that Mrs. Ehrenburg suffered an injury in the manner and of the type alleged by her, and as more specifically described

in depositions which are a part of the record on appeal. Our summary of the events of Mrs. Ehrenburg's injury is taken from the agreed statement as thus expanded by the stipulation.

## I. THE RECORD

On the evening of October 24, 1966, Mrs. William Morrison parked her four-door sedan in front of her Redding home, and a guest passenger—Mrs. Elizabeth Ehrenburg—started to alight from the stopped car. The Morrisons' male scottie dog had been riding in the back seat; Mrs. Morrison usually took the dog with her in the automobile when she drove at night. While still sitting in the right front seat, Mrs. Ehrenburg started to open the door in order to alight from the car. As she did so, the dog jumped from the back seat onto the front seat and over Mrs. Ehrenburg's right shoulder, biting Mrs. Ehrenburg beside the right eye and on her right arm as he climbed over the seat in an attempt to get out of the car.

Under a homeowner's policy in force on the date in question, Hartford insured Mr. and Mrs. Morrison (and agreed to defend them) against liability for bodily injury[1] arising out of the ownership, occupation, and use of their residence, including the operation, maintenance, and use of automobiles on their premises or on the ways immediately adjoining. The "other insurance" clause in Hartford's policy provided, however, that "with respect to loss *arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile . . .* at the premises or the ways immediately adjoining . . . , this insurance shall not apply to the extent that any valid and collectible insurance, whether on a primary, excess or contingent basis, is available to the Insured." (Italics added.) The applicable limit of the Hartford policy was $25,000.[2]

At the same time, under a standard automobile policy with an applicable limit of $10,000,[3] Civil Service insured Mrs. Morrison and her husband (a co-owner of the car) against liability for "bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by

---

[1]Hartford's policy defined "bodily injury" as meaning "bodily injury, sickness or disease, including death resulting therefrom, sustained by any person . . . ."

[2]The record filed in this court does not disclose the applicable limit of either the Hartford or the Civil Service policy for bodily injury liability to one person; at oral argument in this court, however, respective counsel stipulated that the Hartford limit is $25,000 and the Civil Service limit is $10,000.

[3]Vehicle Code section 16451 was amended effective July 1, 1968, to require that owners' policies of automobile insurance provide $15,000 coverage for bodily injury liability to one person arising out of the use of the owned vehicle. (Stats. 1967, ch. 862, § 6.) Theretofore, at the time of Mrs. Ehrenburg's alleged injury, the mandatory minimum was $10,000.

any person, caused by accident and *arising out of the ownership, maintenance or use of the automobile.*" (Italics added.) Civil Service further undertook therein to "defend any suit against the insured alleging such injury, sickness, [or] disease . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . ." In regard to losses within the coverage here described, the "other insurance" clause in the Civil Service policy provided for proration with other "valid and collectible" insurance but did not purport to be excess insurance.

Mrs. Ehrenburg subsequently sued Mr. and Mrs. Morrison, seeking damages for the personal injury caused to her by their dog.[4] Hartford, on its own behalf and on behalf of the Morrisons, notified Civil Service "of the claim and the suit" (we quote the findings) and tendered the defense of the Morrisons to Civil Service. Civil Service refused the tender. Thereafter, having furnished a defense to the Morrisons, Hartford paid Mrs. Ehrenburg $15,000 in full settlement of her claim. Hartford and Civil Service stipulated—and the trial court found—that Hartford acted reasonably and in good faith in negotiating and consummating the settlement and in making the payment of $15,000.[5] Hartford subsequently commenced the present action against Civil Service, seeking indemnification of the $15,000 as well as reimbursement of Hartford's costs and expenses in defending against the Ehrenburg claim.[6]

## II. THE ISSUE

The trial court adjudged that Civil Service had no duty either to defend the Morrisons in the Ehrenburg suit or to indemnify Hartford for its out-

[4]Mrs. Ehrenburg's action was filed in the Shasta County Superior Court. The complaint therein was incorporated by reference in the complaint filed in the same court in the present case, and the Ehrenburg action is referred to both in the agreed statement and in the findings made in the present case. Although the Ehrenburg complaint was not designated as part of the appellate record in the case at bench, we deem that the foregoing circumstances made it mandatory for the trial court to judicially notice the complaint, and that it did so. (See, Evid. Code, § 452, subd. (d), and §§ 453, 664.) Accordingly, we have ordered the present record augmented with the Ehrenburg pleading (Cal. Rules of Court, rule 12(a)), and we judicially notice it (Evid. Code, § 459, subd. (a)).

In her complaint, Mrs. Ehrenburg did not allege either that her injury occurred inside the car or that the scottie had been riding within it. She did, however, allege that the dog bit her while she "was alighting" from the vehicle.

[5]In her deposition, taken in her action against the Morrisons, Mrs. Ehrenburg testified that cancer developed after—and at the site of—the dog bite, resulting in five operations, the surgical removal of her right eye, and other serious residual disability.

[6]Hartford's complaint for indemnification was erroneously entitled one "for declaratory relief." (See, 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 709, pp. 2331-2332, and § 722, pp. 2342-2343.)

lays therein. ■ The judgment reflects the court's express determination that, contrary to Hartford's contention, Mrs. Ehrenburg's injury was not one "arising out of the . . . use" of the Morrisons' automobile, within the meaning of the two policies, but rather that the incident "occurred as a result of the ownership of a dog."

Although the issue is not free of difficulty, we are of the opinion that the trial court erred.

In determining whether the events of the accident were within the coverage of the Civil Service policy, that policy must be considered alone as though the Morrisons had no other insurance available. (*Monolith Portland Cement Co.* v. *American Home Assur. Co.* (1969) 273 Cal.App.2d 115, 123 [78 Cal.Rptr. 113]; *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 148-149 [57 Cal.Rptr. 240].) "If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, [such] as to peril insured against . . . , the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; see also, *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co., supra.*) We must ascertain "that meaning of the contract which the insured would reasonably expect." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 270 [54 Cal.Rptr. 104, 419 P.2d 168].)

"In deciding whether peripheral activity involving a vehicle amounts to a 'use,' the courts follow the rule that uncertainties in policy language are construed in favor of imposing liability on the insurer; hence, that 'use' must be understood in its most comprehensive sense. The term is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." (*Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal. App.2d 700, 703 [76 Cal.Rptr. 281].) (Fns. omitted.) "[T]he acts coming within such use are not necessarily those arising out of or related to the *operation* of the vehicle." (*Glens Falls Ins. Co.* v. *Consolidated Freightways* (1966) 242 Cal.App.2d 774, 783 [51 Cal.Rptr. 789].) (Original italics.) The word "use" may apply though the insured vehicle is at rest. (*St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1966) 244 Cal.App.2d 826, 831 [53 Cal.Rptr. 650].)

The concept of loss *arising out of* the use of an insured vehicle "imports some kind of sequential relationship between the vehicle and the

accident. The decisions posit varying descriptions of this relationship. One is that the vehicle need not be the proximate cause of the injury in the legal sense, but 'the events giving rise to the claim must arise out of; and be related to, its use.' Another is that the injury be a 'natural and reasonable incident or consequence of the use of the [automobile] for the purposes shown by the declarations . . . [and not] directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile].' The phrase 'arising out of' is equated with origination, growth or flow from the event." (*Pacific Indem. Co.* v. *Truck Ins. Exch., supra,* 270 Cal.App.2d at p. 704 (fns. omitted); see also, *International Business Machines Corp.* v. *Truck Ins. Exch.* (1970) 2 Cal.3d 1026, 1031, fn. 6 [89 Cal.Rptr. 615, 474 P.2d 431].)

The transportation of household pets in family cars is commonplace. In the case at bench, the fact that the scottie was riding in the Morrisons' automobile clearly involved a "use" of that vehicle. In *National Indemnity Co.* v. *Corbo* (Fla.App. 1971) 248 So.2d 238, in a case of nationwide first impression, the court held that the plaintiff's injury arose out of the use of the insured's automobile where the plaintiff—a guest passenger—was bitten in the parked car by the insured's watchdog while the car was transporting the dog to the insured's place of business. In so holding, the Florida court relied on the proposition that "arising out of" is a phrase of much broader significance than "caused by," and is ordinarily understood to mean "incident to, or having connection with" the use of the car. (*Id.* at p. 240.)

The biting of Mrs. Ehrenburg presents as strong a case for coverage as did the facts in *National Indemnity Co.* v. *Corbo, supra,* 248 So.2d 238, for here the injury occurred while the Morrisons' dog was trying to get out of the car.

█    The "use" of a vehicle includes its loading and unloading, even though, as in the Civil Service policy in the instant case, there is no specific provision covering such activities. (*International Business Machines Corp.* v. *Truck Ins. Exch., supra,* 2 Cal.3d at p. 1029 & fn. 1; *Truck Ins. Exch.* v. *Webb* (1967) 256 Cal.App.2d 140, 144 [63 Cal.Rptr. 791].) In *Morari* v. *Atlantic Mutual Fire Insurance Company* (1970) 105 Ariz. 537 [468 P.2d 564], the insured accidentally shot a passenger when the insured, standing beside his parked pickup-camper, attempted to take out a hunting rifle from behind the seat, causing the loaded gun (not on safety) to discharge. The court distinguished cases involving the accidental

discharge of firearms and firecrackers by passengers inside automobiles on the ground that they were not "unloading" situations. Pointing out that the rifle was part of the vehicle's normal cargo on hunting trips such as the one in question, the court held that the accident was "connected with" the unloading of the vehicle (i.e., the removal of the gun). (105 Ariz. at p. 540 [468 P.2d at p. 567].) ▇▇ We perceive no logical distinction in the case at bench, where the injury occurred during the "unloading" of the scottie from the Morrisons' car. The circumstances that the scottie was *animate* cargo and was unloading *itself* are not determinative. Dogs transported in family cars normally remove themselves from the vehicles when the trips are over. "The fact that an instrumentality independent of the insured vehicle caused the injuries does not preclude coverage." (*Brunswig Wholesale Druggist* v. *Travelers Ins. Co.* (1969) 273 Cal.App.2d 11, 14 [77 Cal.Rptr. 859]; see also, *American Auto Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543, 549 [19 Cal. Rptr. 558].)

### III. DISPOSITION

"An insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the *potential* of liability under the policy." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 276-277.) (Italics added.) "Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources." (*Id.* at p. 276; see also, *State Farm Mut. Auto Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548-549 [95 Cal. Rptr. 296].) The issue is whether such facts "created the *possibility* that the insurer would be liable for the claim." (*Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 571 [83 Cal.Rptr. 394, 463 P.2d 746] (italics added); see also, *Gray* v. *Zurich Insurance Co., supra,* at p. 277.)

As we have seen, the Civil Service automobile policy obligated it to defend suits alleging personal injury arising out of the use of the Morrisons' automobile even if such suits were "groundless, false or fraudulent." "While it is true, the duty to defend litigation brought against an insured may exist even where coverage is in doubt and ultimately does not develop, 'The "groundless, false, or fraudulent" clause, . . . does not extend the obligation to defend without limits; it includes only defense to those actions of the nature and kind covered by the policy.' (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 274.)" (*State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d at p. 548.)

Mrs. Ehrenburg's complaint against the Morrisons alleged that the scottie bit her while she "was alighting" from the car; but the complaint was silent as to whether the dog had been riding inside the vehicle. (See fn. 4, *supra.*) It is unnecessary, however, for us to determine whether the allegations of the Ehrenburg complaint apprised Civil Service of the possibility that her claim was of the nature and kind covered by its policy. ■ Inadequate allegations of a third party's complaint are not determinative of an insurer's obligation to defend if the insurer learns from the insured or other sources facts which give rise to the potential of liability under its policy. (See *Paramount Properties Co.* v. *Transamerica Title Ins. Co., supra,* 1 Cal.3d at pp. 570-571; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 276-277; *State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d at pp. 548-549.) It was admitted by the answer of Civil Service, and the court found, that Hartford notified Civil Service of the pendency of Mrs. Ehrenburg's "claim," as well as of her lawsuit; and the findings in effect describe her claim as being that the dog "allegedly" bit her while he was climbing over the front seat to get out of the car. Moreover, Civil Service has not contended, either in the trial court or here, that it lacked information concerning the details of the Ehrenburg claim when it refused Hartford's tender.

Accordingly, the refusal by Civil Service to defend the Morrisons was wrongful; the Ehrenburg claim created the possibility of liability on the part of Civil Service. (Note Civ. Code, § 3342 ("dog bite" statute); compare Veh. Code, § 17158 ("guest" statute, in effect at the time of Mrs. Ehrenburg's injury; see *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal. Rptr. 388, 506 P.2d 212]).)

We have shown, in our recital of the "other insurance" clauses of the two policies, that the Civil Service policy (although providing for proration) was primary, and that Hartford's policy was excess. ■ "[I]n the case of multiple insurance policies covering the same loss, one of which contains a provision for proration in the event of other insurance and the other a clause that it shall be treated as 'excess insurance' to any other policy, the policy with the proration clause is primary and must bear the loss to its policy limits." (*Fireman's Fund etc. Ins. Companies* v. *State Farm etc. Ins. Co.* (1969) 273 Cal.App.2d 445, 448-449 [78 Cal.Rptr. 38]; see, *Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318, 328 [54 Cal.Rptr. 385, 419 P.2d 641]; *Donahue Constr. Co.* v. *Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 302-303 [86 Cal.Rptr. 632].)

█ It is the general rule that if there is a wrongful refusal to defend, the insurer loses its right to control the litigation, and is liable for "any reasonable settlement" arrived at in good faith thereunder and paid by the insured. (*Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.* (1961) 190 Cal.App.2d 194, 204 [11 Cal. Rptr. 762]; see also, *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 146 [85 Cal.Rptr. 693].) █ As previously indicated, Mrs. Ehrenburg's $15,000 settlement exceeded by $5,000 the limit of the Civil Service policy. However, the unqualified stipulation in the trial court that the settlement was *reasonable in amount* was tantamount to an acknowledgment by Hartford that the payment of the $5,000 excess was not proximately caused by the refusal of Civil Service to defend (cf. *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 528-531 [88 Cal.Rptr. 246]), and that Hartford would have been liable in any event to pay such excess. Accordingly, Civil Service must reimburse Hartford in the amount of $10,000—the Civil Service policy limit—as the share of the settlement which must be charged against the automobile policy. Similarly, by virtue of the same stipulation, Civil Service is liable for Hartford's costs and expenses (including attorney's fees) only in the same ratio that the limit of the Civil Service policy bears to the $15,000 settlement, rather than for the total amount of costs and expenses incurred by Hartford. (See, *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at pp. 279-281; *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 35-38 [17 Cal.Rptr. 12, 366 P.2d 455]; *Kapelus* v. *United Title Guaranty Co.* (1971) 15 Cal.App.3d 648, 653 [93 Cal.Rptr. 278]; *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.* (1963) 221 Cal.App. 2d 150, 153 [34 Cal.Rptr. 406].)

The judgment is reversed with directions to the trial court (1) to determine the amount and reasonableness of Hartford's costs, expenses, and attorney's fees in defending against the Ehrenburg claim, and (2) to enter judgment in favor of Hartford and against Civil Service in the sum of $10,000 plus two-thirds of those costs, expenses, and attorney's fees found to be reasonable.

Regan, Acting P. J., and Keane, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 16, 1973.

---

*Assigned by the Chairman of the Judicial Council.