**CONTINENTAL CASUALTY COMPA-NY, Plaintiff-Appellee,**

v.

**CITY OF RICHMOND, a municipal corporation, et al., Defendant-Appellant**

**and**

**Mead Reinsurance Company, Defendant-in-Intervention-Appellant.**

**CA Nos. 84–1563, 84–1564.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1984.

Decided June 20, 1985.

Gary V. Dixon, Ross, Dixon & Masback, Washington, D.C., for plaintiff-appellee.

Timothy J. Murphy, Crosby, Heafey, Roach & May, Oakland, Cal., for City of Richmond.

Louis H. Castoria, Wilson, Elser, Edelman & Dicker, San Francisco, Cal., for Mead Reinsurance Co.

Before GOODWIN, POOLE, and BOOCHEVER, Circuit Judges.

POOLE, Circuit Judge:

Continental Casualty Company ("CNA" or the "Company") sought a declaratory judgment that an insurance policy it had issued to the City of Richmond, California, did not provide coverage for claims asserted in a civil rights and wrongful death action filed against Richmond by the three minor children of Willie Lee Drumgoole.

The district court granted summary judgment for CNA, finding that there were no genuine issues of material fact for trial because the policy unambiguously preclud-

ed coverage for the claims asserted. The City and Mead Reinsurance Company ("Mead") appeal. Because we conclude the Drumgoole claims were not covered under the CNA insurance contract, we affirm.

## I. FACTS

On October 1, 1982, the three minor children of Willie Lee Drumgoole filed an action in the United States District Court for the Northern District of California against the City and certain elected officials. The plaintiffs sought damages under the California Wrongful Death Statute, Calif.Code Civ.Proc. § 377 (West Supp.1984), and legal and equitable relief under 42 U.S.C. §§ 1981, 1983, and 1985, as the result of their father's death while in police custody in the Richmond jail.

The complaint alleged that ten Richmond police officers assaulted, beat, and choked Drumgoole on or about September 28, 1982, while Drumgoole was detained in the jail, causing his death. This conduct was said to indicate a pattern and practice of police brutality and excessive force against black citizens by members of the Richmond police department, and to have occurred because of the failure of the City properly to train, supervise, assign, and discipline its employees. The Drumgoole heirs also claimed that their father was denied prompt and appropriate medical attention, and that the defendants conspired to conduct a biased investigation into the incident following Drumgoole's death.

These wrongful acts allegedly violated Drumgoole's constitutional rights to due process, equal protection, and freedom from unnecessary or excessive force in contravention of the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments. In addition, the heirs asserted a claim under the California Wrongful Death Statute for negligent failure of the City employees to exercise the degree of care in controlling Drumgoole that would have been displayed by properly trained and supervised law enforcement officers.

Pursuant to a Public Officials Liability Policy issued by CNA, Richmond gave CNA notice of the Drumgoole lawsuit on November 8, 1982, characterizing the claim as one "aris[ing] out of the alleged wrongful death of Willie Lee Drumgoole on 9/28/82, who had been incarcerated in the Richmond City Jail." The policy provided coverage for errors and omissions, including employee misfeasance, malfeasance, and nonfeasance. CNA, however, refused to defend Richmond in the Drumgoole lawsuit, and denied coverage based on an exclusionary clause in the policy which provided that CNA would not be liable on any claim arising from the bodily injury, assault, battery, or death of any person. CNA filed this action in May 1983 seeking a declaration that the CNA policy did not provide coverage for the Drumgoole claims, and in September 1983, moved for summary judgment.

Richmond also was insured under a comprehensive general liability policy with Mead Reinsurance Company. The Mead policy provided broad liability coverage for bodily injury, property damage, errors and omissions, and personal injury. Mead successfully moved to intervene for the limited purpose of opposing CNA's motion for summary judgment.

On December 22, 1983, the district court granted summary judgment for CNA. The court determined that the claims asserted by the Drumgoole heirs all arose from the bodily injury and death of their father. As a result, those claims were expressly precluded from coverage under the exclusionary clause of the CNA policy. With this conclusion we agree.

Jurisdiction in the district court was based on diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332. This appeal is properly before us under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

■ The task of this court is identical to that of the trial court when reviewing a grant of summary judgment. *M/V American Queen v. San Diego Marine Construction Company*, 708 F.2d 1483, 1487

(9th Cir.1983). We must determine de novo, *Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1313 (9th Cir.1984), whether viewing the evidence in the light most favorable to the party against whom summary judgment has been granted, *M/V American Queen,* 708 F.2d at 1487, the moving party has demonstrated that there is no genuine issue of material fact and that CNA is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *State of Nevada v. United States,* 731 F.2d 633, 635 (9th Cir.1984).

### III. DISCUSSION

The underlying facts in this case are not in dispute. At issue is the scope of the exclusionary clause contained in the CNA insurance policy. The policy provides coverage for "all loss" from any claim for "wrongful acts" made against the insured during the policy period. "Loss" includes any amount that the insured is obligated to pay a claimant "on account of injuries or damages" suffered, in addition to costs, charges and expenses incurred in the defense of lawsuits. "Wrongful act" is broadly defined in the policy as:

> ... any actual or alleged error or misstatement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by the Assureds in the discharge of their duties for the Public Entity individually or collectively or any matter claimed against them solely by reason of their being or having been Assureds.

This definition of "wrongful act" would sufficiently include the acts alleged to have been committed against Drumgoole, were it not for two policy exclusions which provide:

> (c) The Insurer shall not be liable to make any payment for Loss in connection with any claim:
>
> \* \* \* \* \* \*
>
> (3) arising directly or consequentially from bodily injury, mental anguish, sickness, disease, or death of any person or from damage to or destruction

of any tangible property including loss of use thereof;

> (4) arising directly or consequentially from false arrest, libel, slander, defamation of character, invasion of privacy, wrongful eviction, assault or battery.

Since suit was brought in federal district court on the basis of diversity of citizenship, the substantive law of California applies. *See Previews, Inc. v. California Union Ins. Co.,* 640 F.2d 1026, 1027 (9th Cir.1981). Under California law, the interpretation of an exclusionary clause is an issue of law upon which the court must make its own independent determination. *Bareno v. Employers Life Insurance Co.,* 7 Cal.3d 875, 881, 103 Cal.Rptr. 865, 868, 500 P.2d 889, 892 (1972); *Hartford Fire Insurance Co. v. Superior Court,* 142 Cal. App.3d 406, 413, 191 Cal.Rptr. 37, 41 (2d Dist.1983). Whereas coverage clauses are interpreted broadly to afford the greatest possible protection to the insured, exclusionary clauses are construed narrowly against the insurer. *State Farm Mutual Automobile Insurance Co. v. Partridge,* 10 Cal.3d 94, 101–02, 109 Cal.Rptr. 811, 816, 514 P.2d 123, 128 (1973); *Crane v. State Farm Fire and Casualty Co.,* 5 Cal.3d 112, 115, 95 Cal.Rptr. 513, 514, 485 P.2d 1129, 1130 (1971). Exceptions to the performance of the basic underlying contract obligation must be clearly stated to apprise the insured of the effect of those exceptions. *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 269, 54 Cal.Rptr. 104, 107, 419 P.2d 168, 171 (1966). An insurer cannot avoid its primary duty to provide coverage by incorporating into the insurance contract an exclusionary clause that is ambiguous. *State Farm Mutual Automobile Insurance Co. v. Jacober,* 10 Cal.3d 193, 201, 110 Cal.Rptr. 1, 6, 514 P.2d 953, 958 (1973).

When interpreting an insurance policy, the intent of the parties and the reasonable expectations of the insured are considered. *Holz Rubber Co., Inc. v. American Star Insurance Co.,* 14 Cal.3d 45, 57, 120 Cal.Rptr. 415, 421, 533 P.2d 1055, 1061

(1975). The best evidence of the intent of the parties is the policy language. *City of Mill Valley v. Transamerica Insurance Co.,* 98 Cal.App.3d 595, 599, 159 Cal.Rptr. 635, 637 (1st Dist.1979). The CNA policy provisions clearly state that coverage is provided only for claims resulting from enumerated wrongful acts. Specifically excluded are claims arising from bodily injury, death, assault and battery.

## A. Interpretation of "Arising From"

The meaning of "arising from" is central to this coverage dispute. Appellants urge that we interpret the phrase narrowly to find that CNA is obligated to provide coverage for the civil rights claims asserted against the City. They do not contend, however, that coverage should be provided for the wrongful death claims, since those claims obviously have their genesis in Drumgoole's death. Instead, appellants attempt to distinguish the civil rights and the wrongful death claims by employing a causation analysis applicable in concurrent cause cases. This analysis permits coverage under an insurance policy when two different risks concur in proximately causing a single loss if either of the risks is covered. Accordingly, appellants contend that although the heirs' wrongful death claims are excluded under the CNA policy, their civil rights claims are not, because they are independently covered.

We cannot agree with appellants that the concurrent cause analysis applies to the facts of this case, nor can we accept the narrow construction of "arising from" that they urge us to adopt. In *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.,* 283 F.2d 659, 664–65 (9th Cir.1960), we addressed the meaning of "arising from" in the context of an exclusionary clause of a policy insuring aircraft. This court concluded that "arising from" implies something broader than causation. Adopting a Fifth Circuit interpretation, we stated that:

> " 'Arising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean ' "originating from' 'having its origin in,' 'growing out of' or 'flowing from" ' or in short, 'incident to, or having connection with' * * *."

*Id.* at 664 (quoting *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.,* 189 F.2d 374, 378 (5th Cir.1951).

In the context of the exclusionary clause considered in *Cordova,* we found that "arising from" was susceptible to only one reasonable meaning, and therefore, we concluded that the contract terms were unambiguous. Similarly, we can attribute only one reasonable meaning to the language of the CNA exclusionary clause. That meaning precludes coverage of all the Drumgoole heirs' claims.

Like the interpretation given to "arising from" by this court in *Cordova,* California courts consistently have adopted broad definitions of "arising from" and "arising out of." One court equated "arising out of" with "origination, growth, or flow from the event." *Pacific Indemnity Co. v. Truck Insurance Exchange,* 270 Cal.App.2d 700, 704, 76 Cal.Rptr. 281, 283–84 (3d Dist.1969). Another court, in *Hartford Accident & Indemnity Co. v. Civil Service Employees Insurance Co.,* 33 Cal.App.3d 26, 108 Cal. Rptr. 737 (3d Dist.1973), held that "arising out of the use of an insured vehicle imports some kind of sequential relationship between the vehicle and the accident." 33 Cal.App.3d at 32–33, 108 Cal.Rptr. at 741. Thus, the biting of an automobile passenger by a dog that was being transported in the vehicle was held to arise from the use of the vehicle and was covered by the policy. The court added that "arising out of" has been interpreted more broadly than "caused by" to include the notion of "incident to or having connection with." *Id.*

Appellants nonetheless urge that we find the heirs' first claim, for discrimination based upon a pattern and practice of police brutality and excessive force against black citizens, insufficiently connected with the assault, battery, and death of Drumgoole to be denied coverage under the exclusionary clause. They reason that because the

practice of discriminatory conduct and inadequate training and supervision of City employees allegedly predated the particular misconduct directed toward Drumgoole, the discrimination claim could not be said to arise from Drumgoole's injuries. This, however, is but a causation analysis which has been rejected by this court, *Cordova*, 283 F.2d at 664, and California courts. *See Hartford Accident & Indemnity Co.*, *supra*, 33 Cal.App.3d at 32–33, 108 Cal.Rptr. at 741–42. The claim need bear only an incidental relationship to the injury to come within the exclusionary clause of the CNA policy, and the sequence of events is only one factor to consider in reaching this determination.

■ We find that the heirs' pattern and practice claim is related more than just incidentally to Drumgoole's injuries. Had the alleged pattern and practice of discrimination not manifested itself in the injury to Drumgoole, the heirs would have no claim for relief against the City. Indeed, the very existence of the heirs' section 1983 claim, as well as those asserted under sections 1981 and 1985, depends upon there being an identifiable injury to Drumgoole.

Similarly, there exists a close connection between the heirs' second claim (failure of the Richmond police to administer proper medical care to the decedent) and the decedent's injuries. No medical treatment would have been needed if Drumgoole had not suffered any bodily harm at the hands of the police. The heirs' third claim (for alleged biased investigation of the case designed to protect the persons responsible for the misconduct) also clearly finds its genesis in the attack on Drumgoole. Had the attack never occurred, no investigation of Drumgoole's death would have been necessary.

A broad interpretation of "arising from" in the context of the CNA exclusionary clause is even more strongly suggested here by the augmentation of "arising" with the words "directly or consequentially." This language clearly implies that, to be excluded from coverage, a claim need be only slightly connected to one of the types of injury that is specifically identified for exclusion. Where, as in this case, we find an unmistakable connection between the bodily injury and death, and the claims being asserted, CNA's exemption from any coverage obligation is clear.

In addition, the City's own language of notification to CNA regarding the filing of the Drumgoole lawsuit links the heirs' civil rights claims with their claims for wrongful death. The City expressly acknowledged that connection when it stated, "This case arises out of the alleged wrongful death ... of Drumgoole."

In summary, it is clear to us that the injuries suffered by Drumgoole are of the category specifically excluded from coverage by the CNA policy. It is equally obvious that when the term "arising from" is interpreted in the light of existing precedent and the express policy language, the heirs' claims indisputably "arise from" the injuries incurred by Drumgoole. Thus, the CNA policy provides no coverage for the heirs' claims.

In addition to the interpretation of the CNA exclusionary clause, appellants also urge us to find liability based on the "concurrent cause" doctrine, which California courts have recognized. We do not find that doctrine applicable to the facts of this case.

**B. Concurrent Cause Doctrine**

■ Under California insurance law, when two different risks concur in proximately causing a loss, coverage will be upheld if either risk is covered, notwithstanding the exclusion of the other. *Partridge*, 10 Cal.3d at 102, 109 Cal.Rptr. at 817; *Purdie*, 145 Cal.App.3d at 67–69, 193 Cal.Rptr. at 254–55. In accordance with this doctrine, some courts have recognized coverage even in the presence of "arising out of" clauses by carefully distinguishing among the various causes of a particular injury. For example, in *State Farm Fire and Casualty Company v. Kohl*, 131 Cal. App.3d 1031, 182 Cal.Rptr. 720 (2d Dist. 1982), coverage was upheld under the in-

sured's homeowner's policy despite a clause in that policy barring liability arising out of the insured's use of an automobile. In *Kohl*, the insured's vehicle collided with a motorcycle driven by the plaintiff, throwing the plaintiff to the pavement. The insured then negligently moved the injured plaintiff from the road, causing additional injury. The court ruled that the insured's independent negligent act of moving the plaintiff was unrelated to the use of the insured's vehicle, even though the subsequent additional injury caused by moving the plaintiff was related to the original accident. As a result, the loss was held covered under the insured's homeowner's policy.

Similarly, in the leading case of *State Farm Mutual Automobile Insurance Company v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973), the California Supreme Court upheld coverage under both the insured's homeowner's and automobile insurance policies for injury to a passenger resulting from the insured's use of a firearm inside his vehicle. The court found that the insured committed two acts of negligence. First, he modified the trigger mechanism of his pistol to produce "trigger action," and second, he drove his vehicle off the paved road onto adjacent rough terrain in pursuit of a running jackrabbit. During that pursuit, the vehicle hit a bump causing the pistol to discharge and injuring the passenger in the vehicle.

Under the insured's automobile policy, coverage was afforded injuries caused by accidents arising out of the use of the owned motor vehicle. The insurer's liability under the automobile policy was not disputed. At issue was whether the insured's homeowner's policy was also applicable. That policy denied coverage for injuries arising out of the use of any motor vehicle, but contained a broad personal liability provision generally covering the insured for all liability not falling within specific exclusionary provisions. 10 Cal.3d at 98–99, 109 Cal.Rptr. at 814, 514 P.2d at 126. Reasoning that the insured's prior negligent modification of the firearm was an independent cause of the injury, the court concluded that the automobile exclusion in the homeowner's policy did not prevent coverage under that policy. The court held that when a insured risk (negligent modification of the firearm) and an excluded risk (bodily injury arising from motor vehicle operation) constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy. Consequently, because the insured's homeowner's policy contained a broad coverage clause for personal liability, which covered the insured's negligent modification of his gun, the insurer who provided the policy was liable.[1]

■ Appellants argue that the concurrent cause doctrine applies here to permit coverage for the heirs' civil rights claims, even though their wrongful death claims are excluded under the CNA policy. They reason that the civil rights claims are separate and distinct from the claims for wrongful death, and thus provide an independent basis for imposing liability against CNA. This argument is flawed, however, because as previously discussed, the heirs' claims for both wrongful death and civil rights violations directly arose from categories of injuries specifically excluded under the policy.

Appellants further argue that the district court erred in failing to consider extrinsic evidence in determining that the CNA exclusions were unambiguous. We find this argument to be without merit.

---

1. The concurrent cause doctrine is also discussed in *Underwriters Insurance Company v. Purdie*, 145 Cal.App.3d 57, 193 Cal.Rptr. 248 (2d Dist.1983) (negligent hiring of a violent employee was an act independent from a firearm injury inflicted by the employee, therefore the clause in a multiperil liability policy excluding injuries occurring from firearm use was inapplicable); *Glens Falls Insurance Company v. Rich*, 49 Cal.App.3d 390, 122 Cal.Rptr. 696 (1st Dist. 1975) (insured's negligence in handling loaded gun in vehicle did not arise out of automobile use, therefore exclusionary clause in homeowner's policy for auto related injuries was inapplicable).

## C. Extrinsic Evidence

The admissibility of extrinsic evidence under California law is determined according to the rules outlined in *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866 (9th Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). In that case, this court stated:

> Even if the written agreement is clear and unambiguous on its face, the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language of the contract is "reasonably susceptible." If the court finds after considering this preliminary evidence that the language of the contract is not reasonably susceptible of interpretation and is unambiguous, extrinsic evidence cannot be received for the purpose of varying the terms of the contract. The case may then be disposed of by summary judgment * * * because interpretation of the unambiguous contract is solely a question of law * * *.

*Id.* at 871–72 (citations omitted).

Appellants claim that the trial court erred in looking only to the four corners of the policy for its meaning and in failing to consider relevant extrinsic evidence concerning the proper construction of the contract. We disagree. On the contrary, the record reveals that the City presented and the district court considered a large quantum of extrinsic evidence consisting of an eighty-five page memorandum opposing summary judgment and a fifty-one page declaration of counsel, along with deposition transcripts, exhibits and other declarations which the court found to be "in large part irrelevant," "misleading" and "wholly unhelpful...." Furthermore, in its opposition papers, the City brought forth information about the drafting of the CNA policy; the history and development of the public officials liability program; the involvement of CNA's managing general agent; and the brochures used in publicizing the program.

The district court opinion expressly acknowledged the extrinsic evidence presented by the City, stating:

They point to a brochure used to advertise an earlier and comparable policy, and to other evidence gleaned from depositions of Dean, a CNA underwriter, and Mapel, the CNA claims analyst who denied the Drumgoole claim, indicating CNA's understanding that civil rights violations were covered.

Nonetheless, after due consideration of all this material, the court found that "defendants have come forward with no evidence raising a triable issue of fact."

Under the principles of *Brobeck*, it is clear that the district court adequately performed its judicial function by considering extrinsic evidence offered by the City to prove that coverage did exist under the terms of the policy. The district court properly found that the language of the exclusionary clause was not subject to the City's interpretation, and granted plaintiff's motion for summary judgment.

Finally, appellant Mead argues that CNA waived the policy exclusions barring coverage for losses arising from bodily injury, death, assault or battery by failing to investigate the Drumgoole action before denying coverage. We find no support for this assertion.

## D. Waiver

Under California law, an insurer has a duty to defend its insured whenever it possesses factual information indicating potential liability. *Gray v. Zurich Insurance Company*, 65 Cal.2d 263, 276–77, 54 Cal.Rptr. 104, 112–13, 419 P.2d 168, 176–77 (1966); *Mullen v. Glens Falls Insurance Company*, 73 Cal.App.3d 163, 169–73, 140 Cal.Rptr. 605, 609–11 (5th Dist.1977). Mead contends that because the Drumgoole complaint indicated a potential for coverage under the CNA policy, CNA had a duty to investigate the claims before denying coverage. *See Mullen, supra*, 73 Cal. App.3d at 173, 140 Cal.Rptr. at 611. Consequently, since CNA failed to conduct the required investigation, it should now be held to have waived the policy exclusions under which it claims liability is precluded.

As previously discussed, we find that the CNA contract unambiguously pre-

**1084**

cluded CNA's liability for the claims asserted by the heirs against the City. It would therefore be anomalous for us to conclude here that CNA had a duty to defend claims for which it obviously had no potential liability. In essence, we would then be penalizing CNA for its correct judgment in denying coverage. Thus, since CNA had no duty to investigate the Drumgoole lawsuit, appellants' waiver argument must fail.

### IV.  CONCLUSION

The terms of the CNA contract unambiguously excluded coverage for all claims asserted by the Drumgoole heirs. All the wrongful death and civil rights claims charged against the City arose from the bodily injury, mental anguish, invasion of privacy, death, assault and battery of Drumgoole, and all these were within the exclusionary clause of the policy. Because the civil rights claims are not "independent" of other concurrent causes, the concurrent cause doctrine is not available to permit coverage. Finally, the district court properly considered extrinsic evidence in interpreting the CNA policy provisions, and CNA did not waive the exclusionary clause by failing to investigate a case for which it clearly bore no potential liability.

JUDGMENT AFFIRMED.