**HYDRO SYSTEMS, INC.,**
Plaintiff–Appellant,

v.

**CONTINENTAL INSURANCE COMPA-
NY, a New Jersey Corporation,**
Defendant–Appellee.

No. 89–55953.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1990.

Decided March 25, 1991.

Arthur Fine, Mitchell, Silverberg & Knupp, Los Angeles, Cal., for plaintiff-appellant.

Jeffrey S. Barron, Robert S. Wolfe, Michael T. Colliau and Douglas J. Collodel,

Morris, Polich & Purdy, Los Angeles, Cal., for defendant-appellee.

Before HUG, CANBY and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Hydro Systems, Inc. appeals the district court's grant of summary judgment against it in its action for breach of an insurance contract and breach of the covenant of good faith and fair dealing. This court has diversity jurisdiction over the appellant's timely appeal. 28 U.S.C. § 1332. We affirm the judgment of the district court.

## BACKGROUND

Appellant Hydro Systems, Inc. ("Hydro") manufactures fiberglass bathtubs at a plant located in Simi Valley, California. The manufacturing process involves three raw materials: fiberglass, gel coat and resin. Gel Coat and resin are chemical compounds consisting, in part, of a hydrocarbon known as styrene. During Hydro's manufacturing process, gaseous styrene is liberated from the gel coat and resin and dispersed into the air through exhaust fans and stacks.

During the spring and summer of 1988, residents of a Simi Valley neighborhood (the "Greek Tract") made complaints about the odors connected with the styrene emissions from Hydro's plant. The complaints were made to Simi Valley officials and the Ventura County Air Pollution Control District.

On April 15, 1988, the City of Simi Valley Community Services Department, Code Enforcement Division, notified Hydro that the odors and fumes emanating from the plant constituted a violation of the municipal code. The City threatened action to obtain compliance with the code if Hydro failed to act independently. In June and July of 1988, the City's planning commission held hearings to decide whether to suspend, modify, or revoke Hydro's initial proposal to increase the height of exhaust stacks above its plant. On July 15, 1988, the planning commission issued an order immediately suspending Hydro's use of styrene and revoking its operating permit for 90 days.

Hydro appealed the commission's order to the City Council and instituted an action in state court. In July, 1988, Greek Tract residents intervened in the action, filing a complaint contending that Hydro's styrene emissions were causing them bodily injury and property damage. These intervenors, however, did not seek monetary damages for past or present losses, praying only for denial of the relief requested by Hydro as well as seeking costs of suit and attorney's fees. In the state court action, Hydro obtained a temporary restraining order and preliminary injunction restraining enforcement of the commission's order pending Hydro's appeal to the City Council.

On August 17, 1988, the City Council denied Hydro's appeal but allowed it to operate on a reduced schedule until October 25, 1988, while it attempted to ameliorate odors from the facility. In response, Hydro installed a carbon absorption air pollution control system to neutralize the styrene vapors.

Throughout the time period in question, Hydro was the holder of a general commercial liability insurance policy issued by Continental Insurance Co. ("Continental"). In response to the events of 1988, Hydro sought coverage under the policy for the defense of the city's actions and for reimbursement of the cost of complying with the city's orders. By denial letter dated August 25, 1988, Continental concluded that Hydro's claims were not covered under the policy. This suit followed.

The district court granted Continental's motion for summary judgment, holding that Hydro's claims were unambiguously barred by the policy's terms and that Hydro's assertions of a breach of the implied covenant of good faith and fair dealing were therefore precluded. *Hydro Systems, Inc. v. Continental Ins. Co.,* 717 F.Supp. 700 (C.D.Cal.1989).

## DISCUSSION

A grant of summary judgment is reviewed de novo. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). There are no federal issues in this diversity action and California law controls the determination.

### A. Pollution Exclusion Clause

The insurance policy issued by Continental and held by Hydro (the "policy") is a general commercial liability policy covering "those sums that [Hydro] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' ..." The policy has several exclusions, one of which is a pollution exclusion clause which reads:

This insurance does not apply to: (1) 'bodily injury', 'property damage' or injury or damage of any nature or kind to persons or property arising out of the actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of 'pollutants'; (2) any loss, cost or expense incurred as a result of any 'clean-up' of 'pollutants'; or (3) the investigation, settlement or defense of any claim, 'suit' or proceeding against the insured, including any payments, cost or expenses associated therewith, alleging such injury, damage, loss cost or expense as described in (1) and (2) above.

[Definitions]
'Pollutants' is amended to mean any noise, solid, semisolid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, mists, acids, alkalis, chemicals, biological and other etiologic agents or materials, ... 'waste' and any other irritant or contaminant.

Hydro does not deny on appeal that its emissions of styrene gas fall within this main provision of the pollution exclusion clause. Hydro's claim clearly involves the "emission" of a "pollutant" as defined above.

Instead, Hydro argues that its styrene emissions are within the "products-completed operations hazard" exception (the "PCOH") to the pollution exclusion clause. It provides:

However, this [pollution] exclusion does not apply to: (1) the 'products-completed operations hazard'

. . . . .

[Definitions]
'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned.
'Your product' means: a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (1) You; (2) Others trading under your name; or (3) A person or organization whose business or assets you have acquired; ...
'Your work' means: a. Work or operations performed by you or on your behalf; and b. Materials, parts or equipment furnished in connection with such work or operations ...

Whether Hydro's styrene emissions are covered by the policy's PCOH exception depends on the interpretation of the 'your product' and 'your work' definitions. Hydro correctly observes that standard insurance policies are contracts of adhesion, *Globe Indem. Co. v. State of California*, 43 Cal.App.3d 745, 750, 118 Cal.Rptr. 75, 78 (1974), which when ambiguous should be "construed against the insurer and in favor of the insured." *Commercial Union Ins. Co. v. Sponholz*, 866 F.2d 1162, 1163 (9th Cir.1989); *see also Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 632, 640 P.2d 764, 768 (1982). Hydro argues that the policy's PCOH definitions

are sufficiently broad and ambiguous to be read in its favor.

Hydro contends that styrene is a product under the policy's definition. Several courts have examined the meaning of the term "product" as it relates to product hazard exceptions. The majority of courts "define 'products' as goods or services which the insured deals in as his stock or trade." *CPS Chem. Co. Inc. v. Continental Ins. Co.*, 199 N.J.Super. 558, 489 A.2d 1265, 1270 (L.1984) (holding that "industrial wastes" were not products under a products hazard exception because they were "not intended for consumption, sale, or use by others ..."); *see also Paxton–Mitchell Co. v. Royal Indemn. Co.*, 279 Or. 607, 569 P.2d 581, 587 (1977) (interpreting 'product' in the absence of a contractual definition as referring to those things in which the insured "trades or deals").

This common sense definition of the term "product" leads to the conclusion that styrene gas is not one of Hydro's products. Styrene is liberated in the manufacturing process of Hydro's true finished good, fiberglass bathtubs. Hydro has never marketed styrene, nor has it made any attempt to contain it for future use or distribution. The styrene was purposely vented into the atmosphere. We do not believe that the term 'product' as used in the PCOH exception is ambiguous.

However, Hydro argues that the policy's definition of product incorporates styrene because of the term "disposed of". Hydro asserts that since styrene is disposed of, it is a product and therefore within the PCOH. It is true that the policies examined by other courts generally do not contain this term. However, its inclusion in the instant policy should not detract from the generally understood meaning of the term "product". Whether or not Hydro disposes of styrene, the gas is simply not a good or product as these terms are generally understood.

A more compelling argument involves the definition of "your work" in the PCOH. As Hydro indicates, this definition is broad, including "work or operations performed by you...." Hydro argues that

this passage is sufficiently ambiguous to be read in favor of the insured. We agree that, by its terms, the 'your work' definition is broad enough to encompass Hydro's emissions of styrene gas. At the least, there is enough ambiguity in the definition under California law to dictate that it cover styrene gas. *Commercial Union*, 866 F.2d at 1163; *Pisciotta*, 30 Cal.3d at 807, 180 Cal.Rptr. at 632, 640 P.2d at 768.

However, our determination that Hydro's emissions of styrene gas are within the broad language of the PCOH exception's main provision does not end our inquiry. The PCOH exception includes four limitations which modify the main PCOH clause. They read:

Provided that:

(1) the emission, discharge, dispersal, seepage, release or escape of 'pollutants'; (a) does not occur at or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of 'waste'; or (b) does not arise out of the transportation, handling, storage, treatment, disposal or processing of 'waste', at any time, by or for you or any person or organization for whom you may be legally responsible.

(2) 'Your work' does not or did not involve any 'clean-up' of 'pollutants'.

(3) The 'pollutants' were not brought on or to any site or location in connection with operations performed by you or any contractors or subcontractors working directly or indirectly on your behalf.

(4) Any loss, cost or expense incurred as a result of any 'clean-up' of 'pollutants' is not the result of a governmental directive or request, and would otherwise be covered by this insurance.

Hydro claims that Continental has waived its right to rely on the limitations for the denial of coverage. Indeed, where an insurance company "relies on specific grounds for denying a claim [it] thereby waives the right to rely in subsequent litigation on any other grounds which a reasonable investigation would have uncovered." *McLaughlin v. Conn. Gen. Life Ins. Co.*, 565 F.Supp. 434, 451 (N.D.Cal.

1983). This is an issue of waiver and not estoppel. Therefore "reliance or prejudice on the part of the insured" is not necessary to foreclose insurer arguments. *Intel Corp. v. Hartford Acc. & Indemnity Co.*, 692 F.Supp. 1171, 1180 (N.D.Cal.1988). In the absence of California Supreme Court precedent, the *McLaughlin* and *Intel* courts were anticipating the path of California law. Their waiver holdings were founded on established law requiring an insurer to conduct a reasonable investigation into claims. *See Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818–19, 169 Cal.Rptr. 691, 695–96, 620 P.2d 141, 145–46 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). This duty to investigate necessarily demands that insurance companies clearly state their reasons for denial and that all other reasons be waived. *Intel*, 692 F.Supp. at 1180.

In the instant case, Continental denied Hydro's claim by letter dated August 25, 1988 (the "denial letter"). The denial letter quoted certain sections of the insurance agreement, including the main provision of the pollution exclusion clause and the PCOH. Coverage was specifically denied under the pollution exclusion. The limitations were neither quoted nor specifically mentioned as a ground for denial. Hydro argues that these facts present a waiver by Continental of their right to rely on the limitations.

However, we do not believe that Continental waived its right to rely on the limitations. The limitations are an indispensable part of the pollution exclusion clause because they directly modify the PCOH exception. Therefore, when Continental denied coverage based on the pollution exclusion clause, it necessarily incorporated the limitations.[1]

 Because Continental did not waive its right to rely on the limitations, we must determine the limitations' applicability to Hydro's emissions of styrene gas. The

limitations clearly act to reduce the PCOH exception's scope. Limitation # 1 applies to the "discharge" of "pollutants" from any site used by Hydro for the "disposal" of "waste". Under the policy, waste includes "any materials to be disposed." We find that Hydro's styrene emissions are included in this language as styrene is clearly a pollutant which is discharged. The only possible question concerning limitation # 1's applicability is whether Hydro's Simi Valley plant was used for the disposal of waste. Hydro argues that the limitation applies only to waste treatment plants, however, there is nothing in the limitation's language to support such an interpretation. Hydro had its Simi Valley plant designed with stacks to discharge the styrene into the atmosphere, thus logically bringing its plant within limitation # 1's scope.[2]

Our interpretation of Limitation # 1 is supported by California's insurance policy interpretation law, which dictates that "when interpreting an insurance policy, the intent of the parties and the reasonable expectations of the insured are considered." *Continental Cas Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985); *see also Holz Rubber Co., Inc., v. American Star Insurance Co.*, 14 Cal.3d 45, 56, 120 Cal.Rptr. 415, 421, 533 P.2d 1055, 1061, (1975). Given the nature of PCOH exceptions and pollution exclusion clauses generally, we do not believe that Hydro and Continental intended styrene gas emissions to be covered by the insurance policy. By including a pollution exclusion clause in the policy, Hydro and Continental intended generally for the damages caused by "pollutants" to be excepted from coverage. To interpret the PCOH exception, as modified by the limitations, to include Hydro's emissions of styrene gas would be contrary to the general intent of both Hydro and Continental. The PCOH exception focuses on *products* and *com-*

---

1. In this regard, *Intel* can be distinguished. The *Intel* court analyzed the waiver of an entirely distinct exception, one in no way incorporated in the insurance company's denial letter. *Intel*, 692 F.Supp. at 1177.

2. Because we find that Limitation # 1 encompasses Hydro's emissions of styrene gas, we need not express an opinion on the applicability of the remaining three limitations.

*pleted* operations, and styrene gas liberated during the manufacturing process is not encompassed by these terms.

Further evidence of the intent of the parties in adopting the PCOH is the common interpretation of such clauses. PCOH exclusions generally refer to "accidents caused by defective workmanship which arise after completion of work by the insured on construction or service contracts." *CPS Chem.*, 489 A.2d at 1270. The PCOH exception at issue was likely intended to refer to pollution damages arising from Hydro's completed product and completed work (fiberglass bathtubs). Given the parties' probable intent, this court "may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Sponholz*, 866 F.2d at 1163 (holding that "casualty" insurance policy did not cover "title" damages).

The limitations, in modifying the PCOH exception, bring the entire pollution exclusion provision within the reasonable expectations of Hydro and Continental. Simply stated, we doubt that Continental would have agreed to the terms of the PCOH without the inclusion of the limitations. The limitations were intended to eliminate coverage for incidents such as Hydro's emissions of styrene gas.

### B. Duty of Good Faith and Fair Dealing

Hydro argues that issues of material fact exist as to whether Continental breached its duty of good faith and fair dealing for failing adequately to investigate Hydro's claim. California law implies, in every contract, a covenant of good faith and fair dealing which demands that each contracting party "refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Egan*, 24 Cal.3d at 818, 169 Cal.Rptr. at 695, 620 P.2d at 145. Under an insurance contract, the implied covenant requires that the insurer conduct a reasonable investigation into the insured's claim, as "an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Id.* at 819, 169 Cal.Rptr. at 696, 620 P.2d at 146.

Continental argues that it had no duty to investigate all aspects of Hydro's claim because coverage was clearly not afforded under the policy. Continental cites a line of cases which supports its position. This court's decision in *Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076 (9th Cir.1985), is controlling. In *Continental,* an insured argued that its insurer waived certain policy exclusions because it failed to conduct the required investigation. The court determined that the insurance policy "unambiguously precluded" coverage and that, therefore, no duty to investigate the policy existed. *Id.* at 1083–84. Similarly, in *Aetna Casualty and Surety Co. v. Centennial Ins. Co.,* 838 F.2d 346 (9th Cir.1988), this court addressed a similar waiver argument and held that "where the complaint does not plead facts raising potential liability there is no duty to investigate the lawsuit and so waiver is not an issue." *Id.* at 352; *see also Healy Tibbetts Construction Co. v. Ins. Co. of North America,* 679 F.2d 803, 804–805 (9th Cir. 1982) ("There is no merit to the [insured's] allegations of bad faith. The fact that the [claim] was excluded from coverage precludes a question of bad faith refusal to settle.")

Because we hold that the insurance policy's pollution exclusion unambiguously barred coverage of Hydro's claims, Hydro's bad faith claim fails. The initial facts available to Continental dictated that coverage was not available under the policy. Therefore, Continental was under no duty to investigate the entire underlying claim.

### CONCLUSION

The district court's grant of summary judgment in favor of Continental Insurance Company is AFFIRMED.