[No. B186943. Second Dist., Div. Eight. July 12, 2007.]

MARQUEZ KNOLLS PROPERTY OWNERS ASSOCIATION, INC.,
Plaintiff and Appellant, v.
EXECUTIVE RISK INDEMNITY, INC., Defendant, Cross-defendant and
Respondent;
MICHAEL SUTTON et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Law Offices of Rosario Perry, Rosario Perry and Jacqueline M. Fabe for Plaintiff and Appellant.

Gilbert, Kelly, Crowley & Jennett, Timothy W. Kenna and Jeanne S. Kuo for Defendants, Cross-complainants and Appellants.

Inglis, Ledbetter & Gower, Richard G. Ritchie, Richard S. Gower and Gregory J. Bramlage for Defendant, Cross-defendant and Respondent.

OPINION

BOLAND, J.—

## SUMMARY

An endorsement in a liability insurance policy issued to a nonprofit property owners association excluded coverage of claims for wrongful acts based on the design or construction of any structure. We conclude the exclusion did not preclude coverage of a lawsuit brought by a member against the association asserting claims of fraud and breach of duty. The member's claims were not based on the association's involvement in the design or construction of a structure, but instead were based on the association's conduct in opining on a dispute that arose between the member and another homeowner after the member constructed a structure blocking the view of the other homeowner. Accordingly, the exclusion from coverage did not apply, and the trial court erred in ordering summary judgment for the insurer.

## FACTUAL AND PROCEDURAL BACKGROUND

Marquez Knolls Property Owners Association, Inc. (Association), is a nonprofit corporation whose members own or reside in homes in the Marquez Knolls area of Pacific Palisades. Membership is voluntary, and all owners and residents are entitled to be members, subject to an annual dues payment. The purpose of the Association is "to promote and encourage the preservation of the beauty and healthful environment of the residential subdivisions located in the Marquez Knolls area . . . by informative, educational, mediative, and other lawful activities for the benefit of residents of the community." As of November 1, 2004, 277 out of 1182 eligible property owners were Association members. The main activity of the Association is to mediate disputes between its members over the covenants, conditions and restrictions (CC&R's) on their properties. The CC&R's include a restriction on the erection of structures that obstruct the view from other lots.

Executive Risk Indemnity, Inc. (insurer) issued the Association a policy of insurance for the period July 11, 2002, to July 11, 2003, specifically a "Not-for-Profit Organization Directors, Officers and Trustees Liability Insurance Policy" (the policy). The Association's application for the policy stated, in response to a request for a brief description of the Association's operations, that its "[p]rimary function is [to] encourage compliance with CC&R restrictions in deeds of members of the association, for the benefit of the community." The policy applied to claims made during the policy period, and the insurer agreed to pay on behalf of the insured "Loss from Claims first made

against [the Association] during the Policy Period for its Wrongful Acts." A "Wrongful Act" was defined to include any "actual or alleged error, omission, misstatement, misleading statement or breach of duty" by the Association.

Among several endorsements to the policy was an exclusion (the development/construction exclusion) that provided as follows:

"Endorsement No. 5

"Development/Construction Exclusion

"[¶] . . . [¶] In consideration of the premium charged, no coverage will be available under this Policy for Claims for Wrongful Acts based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

"(1) The development, planning or landscaping of any real property (including any landscaping design, site planning and soil, water, environmental or other testing with respect to any such development, planning or landscaping);

"(2) The exercise of any development rights with respect to any real property;

"(3) Any actual or alleged violation of any federal, state, local or common law rule, law, regulation or ordinance respecting the environment or environmental conservation, in connection with any development, planning or landscaping of real property; or

"(4) The design, construction, renovation or rehabilitation of any building, structure or other improvement on any real property."

On June 10, 2003, during the policy period, Association members Nicholas and Yasuko Valery sued the Association, asserting claims of fraud, breach of fiduciary duty, breach of duty to act in good faith, and other claims. The Valerys' complaint alleged as follows:

—In 2001, the Valerys remodeled their property, replacing an attached covered patio area with an enclosed structure. In February 2002, Nicholas Valery contacted the Association for assistance with a dispute raised by a neighboring homeowner, Joan Robertson, who claimed that the Valerys' construction obstructed views from her property. The Association told the Valerys it provided informal, nonpartisan assistance in bringing neighbors together to settle their differences, but did not tell the Valerys it would take

sides in the dispute or issue a formal determination that could or would be subject to a claim of judicial deference. The Valerys thereupon provided information for the Association's use in the dispute resolution process, openly discussing all aspects of the dispute. The Association suggested the Valerys try to settle with Robertson and offer her monetary compensation. After a meeting with the Association in April 2002, the Valerys did not seek further assistance from the Association, but continued settlement discussions with Robertson.

—Thereafter, the Association informed Robertson she should formally apply to the Association so that it could issue a written determination on her dispute with the Valerys. The Association told Robertson its written determination would support Robertson's position and would demand remedial action by the Valerys; the written determination would and/or could be subject to a claim of judicial deference; the Association would provide assistance in a lawsuit filed by Robertson, and would assist Robertson in finding counsel.

—On July 9, 2002, the Association issued a formal determination. Among other things, the determination stated that the Valerys' replacement structure violated paragraph 11 of the CC&R's; called for removal of the structure; and "mandate[d] reinstatement of views alleged to have existed before [the Valerys'] purchase of the [property]."[1]

—Robertson then sued the Valerys, alleging they were bound to comply with the Association's determination and the remedial action dictated by the determination, which was subject to judicial deference. The Association voluntarily provided declarations and documents to Robertson in support of her lawsuit against the Valerys, while denying similar information to the Valerys unless compelled by subpoena.

—The Valerys' replacement structure did not violate paragraph 11 of the CC&R's; the Association had no authority under the CC&R's to issue determinations, which are not entitled to judicial deference; any power the Association had under the CC&R's expired in 1980; and the Association exercised its alleged powers arbitrarily and capriciously, allowing certain homes and owners (the forming members of the Association) unlimited ability to build and expand while severely restricting construction at other homes (of newly arriving homeowners).

After the Association tendered the defense of the Valerys' action to the insurer, the insurer refused to provide a defense or to indemnify the Association for

---

[1] Paragraph 11 of the CC&R's provides in part: "[N]or shall any tree, shrub or other landscaping be planted or any structures erected that may at present or in the future obstruct the view from any other lot . . . ."

any damages that might be awarded in the Valery lawsuit, asserting that coverage was excluded under the development/construction exclusion.

The Association then filed this lawsuit against the insurer and its broker, Michael Sutton and the M.D. Sutton Insurance Agency (Sutton), asserting causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief (against the insurer), and for negligence and declaratory relief against Sutton. Sutton cross-complained against the insurer and others.

The insurer moved for summary judgment, asserting that because of the development/construction exclusion, no coverage existed under the policy. The trial court granted the motion, concluding the language of the exclusion was "not ambiguous": "[T]he language of the definition of 'wrongful act' and of the exclusion is very broad. The exclusion prohibits coverage for claims of wrongful acts (defined to include any error, omission or breach of duty by [the Association] . . .) 'in any way involving . . . improvement on any real property.' Here, [the Association] seeks coverage for claims that it committed a wrongful act—fraudulently, negligently and in breach of duty, attempting to coerce the Valerys to alter the renovations to their house, among others."

Judgment was entered in the insurer's favor and against the Association, and appeals were filed by both the Association and Sutton.

## DISCUSSION

We respectfully disagree with the trial court's conclusion that the development/construction exclusion in the policy precludes coverage of the Valerys' claims against the Association. While the court's interpretation of the exclusion may appear plausible, further analysis demonstrates the interpretation is mistaken. As will appear in more detail *post*, the exclusion of claims for wrongful acts based on or arising out of the "design, construction, renovation or rehabilitation of any . . . structure or other improvement" necessarily refers to *the insured's* "design, construction, renovation or rehabilitation" of a structure, not someone else's. Any other interpretation of the exclusion would be contrary to principles of contract interpretation requiring language to be construed in the context of the policy as a whole and the circumstances of the case; would result in a policy that is almost entirely illusory; has no support in the cases on which the insurer relies; and would defy common sense.

■ The relevant legal principles are well known. The interpretation of an exclusionary clause is an issue of law subject to this court's independent determination. While coverage clauses are interpreted broadly, exclusionary

clauses are construed narrowly against the insurer. (*State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 101–102 [109 Cal.Rptr. 811, 514 P.2d 123].) "[A]ny exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*), fn. omitted.) Insurance policy terms "will be given the 'objectively reasonable' meaning a lay person would ascribe to them," and "the *context* in which a term appears is critical." (*Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 126 [49 Cal.Rptr.2d 567] (*Century Transit*).) While "reliance on common understanding of language is bedrock," the requirements of reasonableness and context are "[e]qually important . . . ." (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

The fundamental error in the trial court's analysis of the policy language is that it omits the requirement of a connection between the risks the policy insures against—or excludes—and the insured. The trial court concluded the Valerys' claim against the Association arose from the construction of an improvement. But the Valerys constructed the improvement, not the Association. The Valerys' claims that the Association acted fraudulently and in breach of its fiduciary duty did not arise out of or result from or involve *the Association's* "design, construction, renovation or rehabilitation" of a structure. The Association had nothing to do with designing or constructing or renovating or rehabilitating any structure. Its only wrongful acts—as the Valerys' complaint clearly demonstrates—were entirely confined to its issuance of a written determination and its related activities in connection with a dispute between two of its members. Of course, the dispute between the members (the Valerys and Robertson) was based on and arose from the structure the Valerys constructed on their property. But the Valerys' claim against the Association arises from the Association's conduct, not from the Valerys' conduct. Likewise, the Association's insurance coverage is for its own wrongful acts, and any exclusion from that coverage must necessarily be addressed to the Association's wrongful acts, not to the wrongful acts of a third party. The Valerys' claims arise from the Association's improper conduct in resolving a dispute between its members, and such claims are clearly covered by the policy.

While the lack of connection between the excluded risk and the insured is more than sufficient to support the conclusion that the exclusion does not apply, other principles of contract interpretation confirm the point. Most importantly, terms of an insurance policy must be read in context. (*Century Transit, supra*, 42 Cal.App.4th at p. 126 ["the *context* in which a term appears is critical"].) The very title of the endorsement—"Development/Construction

Exclusion"—shows that it addresses activities by the insured in the development and construction of real property. All of the excluded activities (see page 231, *ante*) relate to development and construction, and obviously apply to activity by the Association, not by someone else. If any doubt on this point is harbored, one might look at the third of the four exclusions in the endorsement. It excludes claims for wrongful acts involving "[a]ny actual or alleged violation of any federal, state, local or common law rule, law, regulation or ordinance respecting the environment . . . in connection with any development, planning or landscaping of real property . . . ." It cannot be open to doubt that, to be excluded, a claim must arise from the Association's violation of law, not from some other person's violation. The same is necessarily true of the other excluded activities.

Our interpretation is likewise consonant with other principles applicable to exclusionary clauses, which are required to be construed narrowly. The language of the development/construction exclusion could scarcely have apprised the Association that its activities in resolving disputes among members—virtually the sole purpose of its existence—would be excluded from coverage. (See *Gray, supra*, 65 Cal.2d at p. 269 [an exception to the insurer's performance of the basic underlying obligation must clearly apprise the insured of its effect].) Insurance policy terms "will be given the 'objectively reasonable' meaning a lay person would ascribe to them." (*Century Transit, supra*, 42 Cal.App.4th at p. 126.) Neither layman nor lawyer can read the development/construction exclusion and be apprised that it not only excludes the Association's involvement in "design, construction, renovation or rehabilitation" of a structure, but also excludes the Association's involvement in resolving disputes among its members over a member's "design, construction, renovation or rehabilitation" of a structure. The latter reading cannot have been within the contemplation of either the insured or the insurer, and indeed would have made the insurance contract virtually meaningless.

The insurer insists that we need not consider the " 'objectively reasonable expectations of the insured' " because, under California law, "[i]f contractual language is clear and explicit, it governs." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545], citing Civ. Code, § 1638 [the language of a contract governs its interpretation "if the language is clear and explicit, and does not involve an absurdity"].) The development/construction exclusion, however, by no means "clear[ly] and explicit[ly]" excludes a claim "based on" or "involving" the construction of a structure or other improvement by someone other than the insured. The language is, at worst, ambiguous, in that it does not expressly state that the exclusion applies only to conduct by the insured in the construction of any structure, as opposed to conduct by anyone else. But, read in context as we must do, the exclusion is susceptible of only one meaning,

as any other meaning would eliminate a necessary connection between the insured and the risk that is excluded from the policy.

■ Finally, the insurer points out that under California law, the term "arising out of" is broadly interpreted, and cites several cases to this effect. (See, e.g., *Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 323, 328 [81 Cal.Rptr.2d 557] [when policy grants coverage for liability " 'arising out of' " the named insured's work, the additional insured is covered without regard to whether injury was caused by the named insured or the additional insured; injury to a contractor's employee caused by the additional insured's negligent maintenance of a hatch providing access to the work site " 'arose out of' " the work the employee was performing at the site]; *Continental Cas. Co. v. City of Richmond* (9th Cir. 1985) 763 F.2d 1076, 1080–1081 (*Continental Casualty*) [clause excluding claims arising from assault or battery precluded coverage of civil rights claims against the City of Richmond by heirs of Willie Drumgoole, a black man who was beaten and choked to death by Richmond police while in custody; the discrimination claim "need bear only an incidental relationship to the injury" to Drumgoole to come within the exclusionary clause]; *Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26, 32–33 [108 Cal.Rptr. 737] (*Hartford*) [automobile policy insuring against liability for bodily injury arising out of the use of the automobile covered injuries to a passenger who was bitten by the insured's dog while the dog was trying to get out of the automobile].) We do not disagree, either with the cases or the principle that the term "arising out of" is interpreted "more broadly than 'caused by' to include the notion of 'incident to or having connection with.' " (*Continental Casualty, supra*, 763 F.2d at p. 1080, citing *Hartford, supra*, 33 Cal.App.3d at pp. 32–33.) However, none of these cases, involving widely varying circumstances and types of insurance, suggest that we may dispense with a connection between the excluded risk (here, any claim for wrongful acts arising from the construction of a structure) and the insured (the Association). ■ The Valerys' claim against the Association arises from the Association's adverse determination of a dispute between two homeowners, not from the Valerys' construction of the structure that generated the dispute. The development/construction exclusion in the Association's policy does not apply, and the trial court erred in concluding otherwise.[2]

---

[2] The Association also argues on appeal that the trial court erred in denying its motion for leave to file an amended complaint containing two new causes of action, one for unfair claims practices under Insurance Code section 790.03 and one for breach of contract. The trial court concluded (1) no private civil cause of action against an insurer for bad faith is available under Insurance Code section 790 et seq., and (2) the proposed new cause of action for breach of contract asserted the same primary right that was adjudicated in the court's summary judgment order. In light of our reversal of the trial court's summary judgment ruling, eliminating one of the bases for the court's denial of the motion to amend the complaint, the trial court must necessarily reconsider its ruling. Accordingly, this court need not address either the insurer's

## DISPOSITION

The judgment is reversed with directions to enter an order denying the motion for summary judgment. The Appellants are to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.

---

motion to strike portions of the Association's brief addressing the denial of leave to amend or the requests for judicial notice by both parties relating to the insurer's motion to strike.