Filed 1/10/22  Motiva Enterprises v. National Fire & Marine Ins. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MOTIVA ENTERPRISES LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> NATIONAL FIRE & MARINE INSURANCE COMPANY, <br><br> Defendant and Respondent. | A159229 <br><br> (San Francisco City & County Super. Ct. No. CGC-18-567207) |
| MOTIVA ENTERPRISES LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AXIS SURPLUS INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | A159231 <br><br> (San Francisco City & County Super. Ct. No. CGC-18-567207) |
| MOTIVA ENTERPRISES LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MAXUM INDEMNITY COMPANY, <br><br> Defendant and Respondent. | A159233 <br><br> (San Francisco City & County Super. Ct. No. CGC1-8-567207) |

After a fire on one of its refineries injured two workers, killing one of them, appellant Motiva Enterprises LLC (Motiva) sought insurance coverage from the companies that insured the contractor that employed the workers.

1

The trial court concluded on summary judgment that because the workers had been abating asbestos, the relevant policies' asbestos exclusions barred coverage. Because we agree with the trial court that the asbestos exclusions applied, we affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

According to Motiva, it is "one of the world's largest gasoline and diesel fuel refiners and suppliers" and "owns and operates the largest refinery in North America, located in Port Arthur, Texas."[1] Under an agreement dated December 1, 2015, Motiva hired Excel Modular Scaffold and Leasing Corp. (Excel) to abate asbestos at the Port Arthur refinery. The agreement incorporated a broader "Framework Agreement." Under the Framework Agreement, Motiva was to enroll Excel in its "Rolling Contractor Insurance Program."

Excel also purchased insurance policies from respondents AXIS Surplus Insurance Company (AXIS), Endurance American Specialty Insurance Company (Endurance), Maxum Indemnity Company (Maxum), and National Fire & Marine Insurance Company (National Fire). Each policy

---

[1] As support for these and other statements of basic fact, Motiva cites to various trial court briefs as well as to its response to a separate statement of undisputed material fact filed in connection with the motions for summary judgment. These, of course, are not evidence. (Cal. Rules of Court, rule 8.204(a)(1)(C) [brief must support any reference by citation to matter in record]; *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178, fn. 4 [rule "is intended to direct the appellate court to *evidence* in the record," and separate statements are not evidence].) But although "briefs . . . are outside the record, they are reliable indications of a party's position on the facts," and we may rely on them, especially for uncontroverted and uncontroversial facts. (*Franklin v. Appel* (1992) 8 Cal.App.4th 875, 893, fn. 11.)

contained exclusions clauses, which "remove coverage for risks that would otherwise fall within the insuring clause." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16.)

Although all four policies included asbestos exclusions, the trial court disposed of the case by focusing on two of them: one in a primary policy issued by AXIS and one in the National Fire policy. The primary policy issued by AXIS excluded coverage for bodily injury "arising directly or indirectly" out of "the abating, . . . cleaning up, removing, . . . remediation or disposing of, or in any way responding to" asbestos. AXIS, Endurance, and Maxim all issued excess polices that adopted the asbestos exclusion in the AXIS primary policy. The National Fire policy excluded coverage for bodily injury "arising out of . . . [the] removal of . . . asbestos."

According to court filings by the fire victims, in August 2017 an Excel crew was working to abate asbestos at the Port Arthur refinery from a section of a refinery line that was 60 feet in the air. After the asbestos was removed, the crew was lowered to the ground and started to wash the area with what they thought was water to remove any remaining asbestos from the scaffolding. But because of equipment or mechanical issues that are described in a sealed report, they actually sprayed a flammable liquid, causing an explosion and fire. One crew member suffered severe burns and later died, and his supervisor suffered neck injuries and posttraumatic stress disorder.

The supervisor and the deceased crew member's survivors sued Motiva in Texas for the company's alleged negligence. Motiva ultimately paid them as part of a settlement.

Motiva filed this action June 2018 seeking indemnification for the settlement payment from Excel's insurers. As amended, the complaint

alleged causes of action for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.

The insurance companies filed separate motions for summary judgment (except AXIS and Endurance, which filed a joint motion). The companies raised a number of arguments why their policies did not cover the accident, but they all contended that (1) Motiva was not an insured party, and (2) the exclusion for asbestos coverage precluded coverage.

The trial court issued orders separately granting the motions of Axis and Endurance, Maxum, and National Fire, all on the sole ground that the asbestos exclusion in either the AXIS or National Fire policy barred coverage. In effect, the court ruled that even if Motiva were an insured party, it would not be entitled to indemnification because of the policies' exclusions for injuries arising out of asbestos abatement. Motiva appealed from the subsequent judgments (case Nos. A159231 [Axis & Endurance], A159233 [Maxum], A159229 [National Fire]), and this court granted Motiva's motion to consolidate the three appeals.

II.
DISCUSSION

*A. The Trial Court Correctly Found That the Asbestos Exclusions Applied.*

Motiva argues that the trial court misapplied California law when it concluded that asbestos exclusions barred coverage for the victims' injuries. "The interpretation of an exclusionary clause is an issue of law subject to this court's independent determination." (*Marquez Knolls Property Owners Assn., Inc. v. Executive Risk Indemnity, Inc.* (2007) 153 Cal.App.4th 228, 233 (*Marquez Knolls*).) And we review de novo the trial court's decision on summary judgment, considering all the evidence before the trial court except that to which objections were made and sustained. (*Hartford Casualty Ins.*

4

*Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.) We conclude that the trial court correctly applied the exclusions.

The trial court relied on policy exclusions that barred coverage for any injuries "arising out of" asbestos abatement/removal. Insurance coverage is interpreted broadly to afford the insured the greatest possible protection, whereas exclusion clauses are to be interpreted narrowly against the insurer. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648; *Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 16.) But "California courts have interpreted the terms 'arising out of' or 'arising from' broadly: 'It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.' " (*The Travelers Property Casualty Co. of America v. Actavis, Inc.* (2017) 16 Cal.App.5th 1026, 1045.) "This broad interpretation of 'arising out of' applies to both coverage provisions and exclusions." (*Ibid.*; accord, *Jon Davler, Inc. v. Arch Ins. Co.* (2014) 229 Cal.App.4th 1025, 1035.)

It is undisputed that the victims who sued Motiva were working to abate asbestos on the date of the accident, and that their injuries were caused by a fire that occurred at the refinery at the end of their workday. Given these undisputed facts, it appears straightforward that the injuries arose out of asbestos abatement.

Motiva's argument that it is nonetheless entitled to coverage involves different causation analyses that have developed for first- and third-party insurance claims. "If the insured is seeking coverage against *loss or damage sustained by the insured*, the claim is first party in nature. If the insured is seeking coverage against *liability of the insured to another*, the claim is third

5

party in nature." (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 399, fn. 2 (*Garvey*).) Here, Motiva does not appear to have been the insured; its contractor, Excel, was. But even if we assume, as did the trial court, that this circumstance does not bar Motiva's claim, we agree with the trial court that Motiva's claim must be rejected regardless of whether it is analyzed as a first- or third-party claim.

Motiva contends the asbestos exclusions did not apply because asbestos did not "cause" the accident under a "proximate causation" analysis. Motiva relies on Insurance Code section 530, which provides that "[a]n insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." Our Supreme Court has construed Insurance Code section 530 "as incorporating into California law the efficient proximate cause doctrine, an interpretive rule for *first party insurance*. [Citation.] Pursuant to the efficient proximate cause doctrine, 'When a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss,' but 'the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause.' " (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 750, italics added.) The doctrine is "the preferred method for resolving first party insurance disputes involving losses caused by multiple risks or perils, at least one of which is covered by insurance and one of which is not." (*Id.* at p. 753.) When analyzing first-party property insurance, for example, it may be important to analyze the primary cause of the loss so that coverage is not

6

denied because an excluded risk played a legally insignificant role in the harm. (*Garvey, supra*, 48 Cal.3d at p. 406.)

Motiva devotes much of its opening brief to *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 (*Partridge*) and its progeny, but these cases are unhelpful to its cause. In *Partridge*, an insured negligently modified a gun so that it was an "exceptionally dangerous weapon," which then discharged when the insured and two friends were hunting in a moving vehicle, paralyzing one of the friends. (*Id.* at pp. 97–98.) Those seeking coverage contended that both the alteration of the gun and negligent driving were concurrent causes of the accident. (*Id.* at p. 99.) The insured sought coverage from both an automobile insurance policy (which indisputably covered the accident) and a homeowner's policy, which had an automobile exclusion. (*Id.* at pp. 98–99, 101.) The trial court concluded that the two negligent acts were independent and concurrent proximate causes of the victim's injuries and that both policies thus applied despite the automobile exclusion in the homeowner's policy, and the appellate court affirmed. (*Id.* at pp. 99, 101, 103.) To reach this conclusion, the court analyzed whether each act of negligence was a proximate cause of the accident. (*Id.* at pp. 104–105.) Because the insured's negligent modification of the weapon indisputably would have been covered if the accident had not occurred in a vehicle, the homeowner's policy applied despite the automobile exclusion since the weapon proximately caused the accident. (*Id.* at p. 103.) Thus, and stated another way, the rule is that "[i]f the insured's nonexcluded negligence 'suffices, in itself, to render him [or her] fully liable for the resulting injuries' or property damage [citation], the insurer is obligated to indemnify the policyholder even if other, excluded causes contributed to the injury or property damage." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th

7

1008, 1031.) *Partridge* did not hold, as Motiva seems to suggest, that policy exclusions apply solely when an excluded event was the "proximate cause" of a harm.

The Supreme Court later "put *Partridge* in its proper perspective" when it held that it "should be utilized only in *liability* cases in which true concurrent causes, each originating from an independent act of negligence, simultaneously join together to produce injury." (*Garvey, supra*, 48 Cal.3d at p. 399.) "[T]he 'efficient proximate cause standard' comes into play in determining whether coverage exists when both excluded and covered perils *interact* to cause a loss." (*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 782.) In other authority relied upon by Motiva, courts similarly analyzed situations where there were multiple causes of harm and there was a question whether a covered or excluded cause was the cause of an accident for which the insured sought coverage. (*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co., Inc.* (2018) 5 Cal.5th 216, 223 [tort principles govern question of causation when determining whether a defendant's covered negligence, as opposed to excluded intentional acts, is substantial factor in a plaintiff's injury]; *State of California v. Allstate Ins. Co., supra*, 45 Cal.4th at pp. 1008, 1031–1033 [triable issue of fact over whether contamination caused by covered or excluded event].)

Here, Motiva has failed to establish the existence of a covered event other than the asbestos-removal activities that concurrently caused the accident. It relies on a series of cases where courts analyzed whether concurrent causes resulted in injury, but these cases are inapplicable because here there were no such concurrent causes of the fire. (*Safeco Ins. Co. of America v. Parks* (2009) 170 Cal.App.4th 992, 1012 [because negligently

leaving passenger on the side of highway was an "independent, concurrent cause" of passenger's injuries, automobile exclusion in homeowner's policy did not bar coverage]; *Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641, 645 [because negligent supervision of student on boating outing was independent cause of her injuries, boating exclusion on homeowner's policy did not bar coverage].)  Motiva also relies on two cases where there was no connection between the injury alleged and the applicable exclusion (*Marquez Knolls*, *supra*, 153 Cal.App.4th at p. 234 [exclusion for *insured's* construction of a structure did not exclude coverage for insured's conduct regarding dispute over *third party's* construction]) or coverage (*Peters v. Firemen's Ins. Co.* (1998) 67 Cal.App.4th 808, 810–811 [complaint against sexual partner for transmission of herpes virus alleged no facts that would trigger coverage under the defendant's yacht policy]).  Here, by contrast, there is no dispute that there was a connection between asbestos removal and the victims' injuries.

   *State Farm Fire & Casualty Co. v. Salas* (1990) 222 Cal.App.3d 268 is instructive.  There, the insured used sealant to stop a tire leak, but then failed to inform a welder about the sealant when, a few days later, he brought the car to a welding shop for rim work.  (*Id.* at p. 271.)  The welder was seriously injured when the tire exploded while he was working on the tire rim.  (*Id.* at pp. 272–272.)  The insured sought coverage under a homeowner's policy that excluded bodily injury "arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned . . . by . . . an insured."  (*Id.* at p. 271.)  He argued that the accident did not "arise out of his attempt to maintain [his] tire's air pressure" but instead under his failure to warn that the sealant might be flammable, but the court disagreed.  (*Id.* at p. 275.)  It noted that the subject of the relevant policy exclusion, the insured's car,

"was not the mere passive situs of negligence divorced from the vehicle's maintenance. Rather, the insured's entire purpose both in using the sealant and in hiring [a welder] to weld the rim was to maintain his tire's air pressure. It was not merely 'fortuitous' that the vehicle's tire exploded." (*Id.* at p. 278.) Under those circumstances, "[t]he insured's tortious conduct was inextricably linked to his ineffective attempts to maintain his vehicle," and the exclusion thus was unambiguous. (*Ibid.*) Likewise here, the "entire purpose" of the accident victims' use of the hose that caused a fire was "inextricably linked" to asbestos abatement, the subject of the relevant policy exclusions.

Another instructive case is *State Farm Fire & Cas. Co. v. Camara* (1976) 63 Cal.App.3d 48, where an insured sought coverage for an injury suffered while in a dune buggy "designed, constructed and assembled" by the insured driver. (*Id.* at pp. 50, 53.) The insured argued that his homeowner's policy's exclusion for bodily injury "arising out of" vehicle ownership did not apply because the accident was caused by the driver's negligent design of the vehicle, but the court disagreed. (*Id.* at pp. 53–54.) "[T]he accident would not have happened *but for* the defendant's design and construction of the dune buggy. But it does not follow that the accident did not *arise out of the operation or use of* a motor vehicle. . . . As *Partridge* held, the nonvehicle-related cause must be independent of the vehicle-related cause in order for the liability to be covered by the homeowner's policy. Although the operation or use of the dune buggy was not the sole cause of the accident, any contributing *design* cause was dependent upon such operation or use, such that any liability for negligent design necessarily arose out of the operation or use of the motor vehicle." (*Id.* at pp. 54–55, fn. omitted.)

10

Here, of course, the deadly fire would not have happened *but for* the asbestos abatement. Motiva stresses on appeal that equipment or mechanical issues caused the explosion and fire. But we disagree that "asbestos and asbestos abatement played no causal role in the workers' injuries," as Motiva argues, because the fire would not have happened *but for* the workers' role in abating asbestos. It is simply not the case that "Motiva's alleged liability is completely divorced from asbestos or asbestos abatement," as it claims.

In short, we agree that the asbestos exclusions applied here. Motiva faults the trial court for failing to conduct an appropriate causation analysis, but we fail to see how any such analysis would benefit Motiva. Even if we agree that the accident was caused by the faulty hose, the use of that hose was inextricably linked to asbestos abatement, an excluded activity.

## B. The Asbestos Exclusions Were Sufficiently Clear.

Motiva also argues that the judgment must be reversed because an ordinary insured would not understand the exclusions to bar coverage for injuries that "were the result of an industrial accident and not caused by asbestos." We are again unpersuaded.

It is established that " '[a]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As [our Supreme Court has] declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." [Citation.] Thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation.] The exclusionary clause "must be *conspicuous, plain and clear*." ' [Citation.] This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage

11

for the claim purportedly excluded.  [Citation.]  The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." (*MacKinnon v. Truck Ins. Exchange*, *supra*, 31 Cal.4th at p. 648, fn. omitted.)

Motiva focuses on AXIS's primary policy.  The policy included a section titled "EXCLUSION—ASBESTOS" that, as Motiva acknowledges, excluded coverage for bodily injury arising directly or indirectly out of, among other things, "[a]ny loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediation or disposing of, or in any way responding to, or assessing the effects of asbestos, asbestos fibers, or any other form of asbestos, by any insured or by any other person or entity."  It further excluded coverage for "[a]ny injury or damage caused or alleged to have been caused by the removal, eradication, detoxification, remediation or decontamination of asbestos or property containing asbestos."  Contrary to Motiva's contention, this is hardly language that would leave an ordinary insured—much less one of the largest gasoline and diesel fuel refiners in the world—"hopelessly confused by its overlapping provisions and its arcane language."

Motiva maintains that the exclusion should be understood to apply only when "it is the *presence of asbestos*—not ordinary negligence—that causes the injury."  It directs us to the final paragraph of the exclusion, which provides that it "shall apply without regard to the source or sources of asbestos, or the basis of the 'insured's' liability.  This exclusion includes defects or negligence in design, construction or materials, or any other event, conduct or misconduct, which may have or is claimed to have precipitated, caused or acted jointly, concurrently, or in any sequence with asbestos in causing injury

12

or damage." Motiva contends that, when read together with the rest of the provisions, the exclusion thus "is specifically limited to circumstances where asbestos causes the injury or damage," as opposed to "ordinary negligence that coincidentally relate[s] to asbestos or asbestos abatement." Given the broad language of the exclusion, we cannot agree with Motiva's strained reading.

Motiva contends that applying the asbestos exclusion here would be as "absurd" as the following hypotheticals: applying a pollution exclusion to deny coverage for injuries suffered when slipping on spilled Drano or having an allergic reaction to a swimming pool's chlorine since almost any substance may be considered an "irritant" or "contaminant," terms generally used in pollution exclusions. (*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.* (7th Cir. 1992) 976 F.2d 1037, 1043 [courts reject such a broad interpretation of pollution exclusions and take "a common sense approach"].) We see no such absurdity here. There is no dispute that the injured workers were abating asbestos, and we do not need to rely on any strained or absurd definitions of those terms to conclude that the exclusion applies.

In light of our conclusion that the asbestos exclusions barred coverage, we need not analyze respondents' alternative grounds to affirm.

### III.
### DISPOSITION

The judgments are affirmed. Respondents shall recover their costs on appeal.

13

_____

Humes, P. J.

WE CONCUR:

_____

Margulies, J.

_____

Sanchez. J.

*Motiva Enterprises v. Axis Surplus Insurance* A159229, A159231, A159233